Filed 2/27/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| DANA HOHENSHELT, | B327524 |
| Petitioner, | Los Angeles County Super. Ct. No. 20PSCV00827 |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| GOLDEN STATE FOODS CORP., | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in Mandate. Thomas Falls, Judge. Petition granted.

Mayall Hurley and Nicholas F. Scardigli for Petitioner.

Sanders Roberts, Reginald Roberts, Jr., Melvin L. Felton, Ashley N. Bobo and Tyler S. Dobberstein for Real Party in Interest.

No appearance for Respondent.

_____

## FACTUAL AND PROCEDURAL BACKGROUND

On November 25, 2020, Dana Hohenshelt (Hohenshelt) filed a complaint against his former employer Golden State Foods Corp. (Golden State). The complaint alleges four causes of action: retaliation under the California Fair Employment and Housing Act (FEHA); failure to prevent retaliation under FEHA; violation of Labor Code section 226, subdivision (c), failure to timely provide copies of wage statements; and violation of Labor Code section 1198.5, subdivision (b), failure to timely provide copies of personnel records. Golden State moved to compel arbitration according to the parties' arbitration agreement. On April 1, 2021, the trial court granted the motion and stayed court proceedings pending binding arbitration.

On August 3, 2021, arbitration commenced via Judicial Arbitration and Mediation Services (JAMS). An arbitrator was appointed on August 16, 2021. Per the arbitrator's fee schedule, "All fees are due and payable in advance of services rendered." On July 29, 2022 JAMS sent an invoice to Golden State for $32,300. On August 29, 2022, JAMS sent another invoice for $11,760. Both invoices were due to be paid within 30 days of their respective due dates; both invoices provide that payment is "due upon receipt."

On September 30, 2022, JAMS sent a letter stating: "Pursuant to our fee and cancellation policy, all fees must be paid in full by October 28, 2022, or your [arbitration] hearing may be subject to cancellation."

Later that same day, on September 30, 2022, Hohenshelt notified JAMS and the court that because Golden State did not pay within 30 days of the due date, he was "unilaterally elect[ing]" to withdraw his claims from arbitration and to proceed

2

in court pursuant to Code of Civil Procedure[1] section 1281.98, subdivision (b)(1).

On October 5, 2022, Golden State confirmed via email to Hohenshelt that "all outstanding fees have been paid in full."

On October 6, 2022, Hohenshelt filed a motion to lift the litigation stay pending arbitration.

On February 2, 2023, the court denied the motion. It deemed Golden State's payment timely based on the September 30, 2022 letter providing a new due date of October 28, 2022 for payment. The court held that "the arbitrator seemingly *set a new due date* of October 28, 2022." (Italics added.)

Hohenshelt filed a writ petition challenging the court's denial of this motion to lift the litigation stay pending arbitration. He requests that we issue a peremptory writ of mandate directing the trial court to vacate its February 2, 2023 order and enter an order lifting the stay of litigation to allow him to pursue his claims in court.

## DISCUSSION

### I.  *Applicable Law*

In 2019, the Legislature enacted section 1281.98 to curb a particular arbitration abuse. (*Cvejic v. Skyview Capital, LLC* (2023) 92 Cal.App.5th 1073, 1076 (*Cvejic*).) The abuse was that a defendant could force a case into arbitration but, once there, could refuse to pay the arbitration fees, thus effectively stalling the matter and stymying the plaintiff's effort to obtain relief. (*Ibid*.) The Legislature called this " ' "procedural limbo." ' "

---

[1]  Further undesignated statutory references are to the Code of Civil Procedure.

3

(*Gallo v. Wood Ranch USA, Inc.* (2022) 81 Cal.App.5th 621, 634 (*Gallo*).)

Section 1281.98 provides: "In an employment or consumer arbitration that requires . . . the drafting party pay certain fees and costs during the pendency of an arbitration proceeding, *if the fees* or costs . . . *are not paid within 30 days* after the due date, *the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel the employee or consumer to proceed with that arbitration* as a result of the material breach." (§ 1281.98, subd. (a)(1), italics added.)

Subdivision (b) of section 1281.98 provides employees and consumers with a choice of forum upon breach—they may elect to "[w]ithdraw the claim from arbitration and proceed in a court of appropriate jurisdiction" or "[c]ontinue the arbitration proceeding" should the provider agree to continue.

Effective January 1, 2022, the Legislature amended section 1281.98 to include a new sentence in subdivision (a)(2): "Any extension of time for the due date shall be agreed upon by all parties." (Stats. 2023, ch. 478, § 17.)

## II.    *Standard of Review*

Our review is independent because we interpret a statute on undisputed material facts. (*Cvejic*, *supra*, 92 Cal.App.5th at p. 1077.) We give statutory words their plain meaning. (*Ibid*.) Our goal is to effectuate the statute's purpose. (*Ibid*.)

III.   *Analysis*

The trial court's ruling was inconsistent with statutory mandate as well as recent appellate opinions.

First, the trial court's ruling ignored the clear language of section 1281.98, subdivision (a)(2), which expressly provides that "[a]ny extension of time for the due date shall be agreed upon by all parties."  Here, there is no evidence that Hohenshelt agreed to any extension.

Second, we dealt with this exact same situation in *Cvejic*.  In that case, the defendant employer Skyview's fees were due June 4, 2021; by July 8, Skyview had not paid.  (*Cvejic*, *supra*, 92 Cal.App.5th at p. 1075.)  The panel of arbitrators "set a new deadline" of July 14 for payment of fees.  (*Ibid*.)  Within an hour, Cvejic informed the panel that he was "withdrawing from the arbitration under section 1281.98."  The chair of the arbitration panel responded that Cvejic's request was "premature"— presumably because the deadline was now July 14.  (*Ibid*.)  Skyview paid the arbitration fee by the new due date.  (*Ibid*.)  We held in *Cvejic* that Skyview was "in material breach of the parties' arbitration agreement.  Section 1281.98 entitled Cvejic to withdraw from arbitration.  It is that simple. [¶] *The statute does not empower an arbitrator to cure a party's missed payment.* There is no escape hatch for companies that may have an arbitrator's favor.  Nor is there a hatch for an arbitrator eager to keep hold of a matter.  As the trial court observed, 'If . . . the drafting party were permitted numerous continuances for failure to pay arbitration fees, therefore delaying the proceedings, [section 1281.98] would have no meaning, force, or effect.' " (*Cvejic*, at p. 1078, italics added.)

5

Our colleagues in *Gallo* similarly held that "any payment that exceeds the arbitration provider's deadline and a statutorily granted 30-day grace period to be a material breach as a matter of law." (*Gallo, supra,* 81 Cal.App.5th at p. 644, italics omitted.) The *Gallo* court further explained that section 1281.97[2] "statutorily defines a material breach as a matter of law to be the failure to pay anything less than the full amount due by the expiration of the statutory grace period, rather than leaving materiality as an issue of fact for the trier of fact to determine." (*Gallo*, at p. 644.)

We believe the same logic applies in the case before us. Golden State's arbitration fees were due to be paid within 30 days of the two invoices. Payment for the July 29, 2022 invoice was due August 28, 2022, and payment for the August 29, 2022 invoice was due September 28, 2022. Section 1281.98 entitled Hohenshelt to withdraw from the arbitration. Section 1281.98 does not allow for any extension of time for the due date absent an agreement "by all parties." (§ 1281.98, subd. (a)(2).) JAMS's September 30, 2022 letter allowing payment until October 28, 2022 in no way cured Golden State's missed payment and material breach.

---

[2] The Legislature enacted section 1281.97 along with section 1281.98. The procedures and remedies under sections are largely parallel and "require no different analysis." (*Williams v. West Coast Hospitals, Inc.* (2022) 86 Cal.App.5th 1054, 1066.) Section 1281.98 applied to the failure to pay fees *during the course of the arbitration* whereas section 1281.97 applies to the failure to pay fees due at the *initiation of arbitration*.

6

Next, Golden State argues for the first time via its supplemental brief that section 1281.98 is preempted by the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) and that we should uphold the trial court's order to allow the parties to return to arbitration. The Supremacy Clause of the United States Constitution declares federal law to be the supreme law of the land, and thereby empowers Congress to enact statutes that displace—in the vernacular, preempt—contrary state laws. (*Gallo, supra*, 81 Cal.App.5th at p. 635.) We exercise our discretion to address a constitutional question raised for the first time in this court. (See *Hittle v. Santa Barbara County Employees Retirement Assn.* (1985) 39 Cal.3d 374, 391, fn. 10.)

The question of whether section 1281.98, as well as sections 1281.97 and 1281.99, are preempted by the FAA was addressed and answered in *Gallo* and followed thereafter by other courts. (See *Suarez v. Superior Court* (2024) 99 Cal.App.5th 32, 41–42; *Espinoza v. Superior Court* (2022) 83 Cal.App.5th 761, 783–784; *De Leon v. Juanita's Foods* (2022) 85 Cal.App.5th 740, 753–754.)

*Gallo* held these state laws are not preempted "because the procedures they prescribe *further*—rather than *frustrate*—the objectives of the FAA to honor the parties' intent to arbitrate and to preserve arbitration as a speedy and effective alternative forum for resolving disputes." (*Gallo, supra*, 81 Cal.App.5th at p. 630.) Analyzing precedent, the *Gallo* court observed that the mere fact that a law applies solely to arbitration is insufficient to preempt it under the FAA. (*Id.* at p. 638.) These state laws "do not commit the additional—and . . . necessary for preemption—sin of outright prohibiting arbitration or more subtly discouraging arbitration. Instead, [they] define the procedures governing the date by which the party who drafted an agreement

7

to arbitrate against an employee . . . must pay the initial fees and costs to arbitrate, and specify the consequences of untimely payment." (*Id*. at p. 641, italics omitted.)  These state laws are "fully consistent with the parties' more general intent to arbitrate because the parties' agreement was to arbitrate the dispute, not let it die on the vine and languish in limbo while the party who demanded arbitration thereafter stalls it by not paying the necessary costs in a timely fashion." (*Id*. at p. 643.)  Moreover, these state laws also do not disfavor arbitration "because the consequences of blowing the payment limitations period they erect do not necessarily end the nascent arbitration" as the employee maintains "the option of continuing in arbitration or returning to a judicial forum." (*Id*. at p. 642, italics omitted.)  It "both gives effect to the parties' agreement as well as furthers another of the FAA's main purposes . . . —namely, ensuring the ' "quick, inexpensive, and conclusive resolution to [a] dispute." ' " (*Id*. at p. 640.)

The *Gallo* court did note its ruling "had the effect of *ending* the arbitration in this case." (*Gallo*, *supra*, 81 Cal.App.5th at p. 645, italics added.)  The opinion reasoned the fault belonged with the employer, which had not paid its fees on time.  The same could be said of respondent employer Golden State (and the employer in *Cvejic*).  Other employers presumably would take note of this incentive to speed up the arbitration.  This incentive to speed arbitration in other cases means the California statute "is a friend of arbitration and not its foe." (*Ibid*.)

8

## DISPOSITION

We grant the petition for writ of mandate and direct the trial court to vacate its order denying the motion to lift the stay of litigation and to enter an order lifting the stay. Costs are awarded to petitioner.

**CERTIFIED FOR PUBLICATION**


STRATTON, P. J.

I concur:


VIRAMONTES, J.

9

**WILEY, J., Dissenting:**

What preempts this statute is the decision to make *arbitration* the hostage of delay.

Delaying contract performance in bad faith is an odious tactic. Employers pursuing this tactic may deserve sanction. But sanctions like damages, a statutory fine of a motivating magnitude, and attorney fees would amply deter delay. Why abolish the *arbitration itself*?

One answer is that California state law disagrees, strongly and persistently, with federal law about whether arbitration is desirable.

Indeed, the plaintiff's attorney was candid about this stance in oral argument, saying he disagreed with the Supreme Court of the United States about forcing arbitration on employees. He spoke strongly in the statute's defense. From a preemption perspective, that is the problem. People opposed to arbitration are supporting this statute. People opposed to arbitration are not friends of arbitration.

Judged by actions, California law over the last few decades also has not been a friend of arbitration.

By again putting arbitration on the chopping block, this statute invites a *seventh* reprimand from the Supreme Court of the United States.

Recall the past six. Over and over again, with determined but unavailing persistence, the Supreme Court of the United States has rebuked California state law that continues to find new ways to disfavor arbitration.

First, the high court held the Federal Arbitration Act set forth a federal policy favoring arbitration that was clear and in unmistakable conflict with California's "requirement that

1

litigants be provided a judicial forum for resolving wage disputes. Therefore, under the Supremacy Clause, the [California] statute must give way." (*Perry v. Thomas* (1987) 482 U.S. 483, 491 [preempting California law].)

Second, the high court held the Federal Arbitration Act preempted California state law referring certain disputes initially to an administrative agency. "When parties agree to arbitrate all questions arising under a contract, the [Federal Arbitration Act] supersedes state laws lodging primary jurisdiction in another forum, whether judicial or administrative." (*Preston v. Ferrer* (2008) 552 U.S. 346, 359; see also *id.* at pp. 349–350, 355–356.)

Third, the high court's decision in *AT&T Mobility v. Concepcion* (2011) 563 U.S. 333, 337–338, 352 preempted California's rule that class-action waivers in arbitration agreements were unconscionable.

Fourth, in *DIRECTV, Inc. v. Imburgia* (2015) 577 U.S. 47, the high court pointedly addressed California's continuing defiance of federal law. The "Supremacy Clause forbids state courts to dissociate themselves from federal law because of disagreement with its content or a refusal to recognize the superior authority of its source. . . . The Federal Arbitration Act is a law of the United States, and *Concepcion* is an authoritative interpretation of that Act. Consequently, the judges of every State must follow it." (*Id.* at p. 53 [preempting California law].)

Fifth, the decision in *Lamps Plus, Inc. v. Varela* (2019) 587 U.S. __ [139 S.Ct. 1407, 1414–1415] reversed the Ninth Circuit for applying a California state law requiring courts to construe ambiguities against the drafter, a rule that applied with peculiar force, said California law, in the case of a contract of adhesion, like the arbitration contract there at issue. The proper approach

2

required the federal Act's default rule, which is that "ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration." (*Id.* at p. 1418.) The *Lamps Plus* decision thus preempted a California law disfavoring arbitration.

Sixth, *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639, 662 preempted a California arbitration law that invalidated contractual waivers of the right to assert representative claims under California's Private Attorneys General Act. Federal law established an equal treatment principle: state courts may invalidate an arbitration agreement based on generally applicable contract defenses like fraud or unconscionability, but not on legal rules that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue. (*Id.* at p. 649.)

So, the federal arbitration preemption rule is simple. The Federal Arbitration Act preempts a state rule that "singles out arbitration agreements for disfavored treatment." (*Kindred Nursing Centers L.P. v. Clark* (2017) 581 U.S. 246, 248.)

This California statute "singles out arbitration agreements for disfavored treatment." No other contracts are voided on a hair-trigger basis due to tardy performance. Only arbitration contracts face this firing squad.

This statute thus is preempted. California cannot create a rule specific to the arbitration context that contravenes the arbitration on which the parties agreed. After six epistles, we should get the message.

A federal decision made short work of the argument favoring this statute. This pro-statute argument claims the statute is a friend to arbitration. The federal decision debunked this claim. (See *Belyea v. GreenSky, Inc.* (N.D.Cal. 2022)

637 F.Supp.3d 745, 759.)  The *Belyea* court examined this friend-of-arbitration claim that the statute encourages arbitration. *Belyea* then asked the incisive question:  "But how?  It does so by making arbitration agreements *unenforceable*."  (*Ibid.*, emphasis added.)

A friend of arbitration does not make the arbitration agreement unenforceable.  Federal law does not allow a state to save arbitration by destroying it.

The *Belyea* critique was devastating.

Yet California state cases that postdate *Belyea* continue to espouse the friend-of-arbitration logic without engaging, or acknowledging, *Belyea*'s critique.  (See *Suarez v. Superior Court* (2024) 99 Cal.App.5th 32, 41–42; *De Leon v. Juanita's Foods* (2022) 85 Cal.App.5th 740, 753–754; cf. *Espinoza v. Superior Court* (2022) 83 Cal.App.5th 761, 783–784 [pre-*Belyea* decision rejected preemption].)

In my estimation, this devastating critique accurately states overriding federal law.  This state statute is invalid because it violates a clear federal rule.


WILEY, J.